# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

RAYMOND E. BLAKE
      PLAINTIFF

    VS.

CIVIL ACTION
(CIVIL RIGHTS COMPLAINT)
NO. #07-230-JJF

RUTH ANN MINNER, Governor
CARL C. DANBERG, Commissioner of corrections
JOSEPH R. BIDEN III, Attorney General
JAMES M. BAKER, Mayor
MICHAEL J. SZCZERBA, Police chief
SHAWN MARTYNIAK, Deputy Attorney General
DRUG MUG, city counsel
DAVE C. ROSENBLUM, wilmington senior police officer
_____ FRIEDENREICH, Probation officer
MARK LEWIS, Probation officer
RAYMOND D. ARMSTRONG, Assistant Public Defender
_____ BROWN, wilmington Police officer
MARY M. JOHNSTON, Superior Court Judge
PEGGY L. ABLEMAN, Superior court Judge
KAREN D. GUY, state's witness
MANONCHEK C. YOUNG, Law Library clerk (D.C.C.)
MICHAEL LITTLE, supervising Law Library clerk (D.C.C.)
ANGELO JOHNSON, Law Library clerk (H.R.Y.C.I.)
RAPHAEL WILLIAMS, warden (H.R.Y.C.I)
THOMAS CARROLL, warden (D.C.C.)
C.M.S, correctional Medical Service
JANICE HENRY, captain (D.C.C)
STACEY HOLLIS, counselor (D.C.C.)
NATASHA L. HOLLINGSWORTH, sgt. (D.C.C.)

U.S. DISTRICT COURT
DISTRICT OF DELAWARE
FILED
AUG - 6 2007
BP Scanned

## AMENDED CIVIL RIGHTS COMPLAINT

### I. JURISDICTION

1. This is a civil action authorized by 42 U.S.C. § 1981(a), § 1983(b), § 1985(c), and (D) § 1986, to address the depriv-ation of rights secured by the constitution of the United States. The court has jurisdiction under 28 U.S.C § 1331. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201 and 2202.

### II. PLAINTIFF

2. Plaintiff, Raymond E. Blake was a resident of 2411 N. Tatnall, Wilmington, Delaware 19802. And presently resides at (D.C.C.) Delaware correctional center, 1181 PADDOCK, ROAD., SMYRNA, DELAWARE 19977.

### III. DEFENDANT(s)

3. Defendant, Ruth Ann Minner, Governor, in official and unofficial capacity as Governor of the state of Del-aware and all said-above branches of authority, is legally responsible for the management and supervision of the overall operations for each department.

4. Defendant, Carl C. Danberg, Commissioner of corrections, in official and unofficial capacity as commissioner of corrections for the state of Delaware., And all said-above branches under his authority, is legally responsible for the management and supervision of the over all operation(s) for each Department.

5. Defendant, Joseph R. Biden III, Attorney General, in official and unofficial capacity as Attorney General of the state of Delaware and all said-above branches under his authority, is legally responsible for the management and supervision of the over all operation(s) for each Department.

6. Defendant, Shawn Martyniak, Deputy Attorney General, in official and unofficial capacity as Deputy Attorney General for New castle county and all said-above branches under his authority, is legally responsible for the Prosecution of the overall operation(s) for each Department.

7. Defendant, James M. Baker, Mayor, in official and unofficial capacity as mayor for the city of Wilmington, Delaware and all said-above branches under his authority, is legally responsible for the management and supervision of the overall operation(s) for each Department.

8. Defendant, Michael J. Szczerba, Police chief, in official and unofficial capacity as Police chief for the city of Wilmington, Delaware and all said-above officer(s) under his authority, is legally responsible for the management and supervision of the overall operation(s) for each officer.

9. Defendant, Dave C. Rosenblum, Police officer, individually and in official and unofficial capacity as a Senior Corporal Police officer for the city of wilmington, Delaware and all said-above officer(s) under his authority, is legally responsible for the management and supervision of the over all operation(s) for each officer.

10. Defendant, Mark Lewis, Probation officer, individually and in official capacity as a probation officer for the city of wilmington, Delaware and Newcastle county is legally responsible for the supervision of probationer(s) as well as parolee's.

11. Defendant, _____ Friedenreich, Probation and Parole officer, individually and in official capacity as a Probation and Parole officer for the city of wilmington, Delaware and New castle county is legally responsible for the supervision of probationer(s) as well as parolee's.

12. Defendant, Raymond D. Armstrong, Assistant Public Defender, individually and in official and unofficial capacity as a Assistant Public Defender in Newcastle, county is legally responsible for representation of indigent

Citizens.

13. Defendant, _____ Brown, Police officer, individually and in official capacity as A police officer for the Wilmington Police Department, is legally responsible for the protection of citizens.

14. Defendant, Mary M. Johnston, superior court Judge, in official and unofficial capacity as A superior court Judge in Newcastle county and all said-Above branches or person(s) under her control or authority, is legally responsible for the management and supervision of the overall operation(s) for each Department.

15. Defendant, Peggy L. Ableman, superior court Judge, in official and unofficial capacity as A superior court Judge in Newcastle county and all said-Above branches or person(s) under her control or authority, is legally responsible for the management and sup-ervision of the overall operation(s) for each Depart-ment.

16. Defendant, Karen D. Guy, (state's witness), knowingly and intentionally caused permenant damage by knowingly and willingly given A perjurized statement, which this statement caused plaintiff undue duress, mental anguish and mounts of hardship(s). Defendant, Karen Guy with requisite state of mind did personally cause the alleged deprivation in this instant case (i.e., violating plaintiff's Fifth and eighth Amendment rights) the direct

result of Ms. Guy's participation in the alleged wrong doings give rise to deliberate indifference to A substantial risk of harm inmate or detainee health and safety. Defendant Guy knew of and was aware of her malicious intent to cause said harm, and by carelessly disregarding this risk failed to take reason- -able measures or actions to abate it.

17. Defendant, Manonchek C. Young, clerk of the Law library of (D.C.C.) individually and in official capacity as A clerk of Delaware correctional center is legally responsible for the providance of legal materials to unsentenced inmates or detainees.

18. Defendant, Michael Little, supervisor of the clerk of the Law Library of (D.C.C.) individually and in official and unofficial capacity As A clerk of Delware correctional center is legally responsible for the management and supervision of the overall operation(s) of his department.

19. Defendant _unknown_ Angelo, clerk of the law library of (H.R.Y.C.I) individually and in official capacity AS A clerk of the Howard R. Young correctional institution is legally responsible for the management and supervision of his department and in the providance of legal materials to unsentenced in mates or detainees.

20. Defendant, Raphael Williams, warden in official and unofficial capacity as warden of the Howard R. Young Correctional institution for the state of Delaware., is legally responsible for the management and supervision of the overall operations of his department.

21. Defendant, Thomas Carroll, warden in unofficial and official capacity as warden of the Delaware correctional center (D.C.C.) for the state of Delaware is legally respons-ible for the management and supervision of the overall operation(s) of his department.

22. Defendant, Natasha L. Hollingsworth, sargent in official and unofficial capacity as a sargent of the Delaware correctional center (D.C.C.) for the state of Delaware is legally responsible for the supervision of security as well as the management and supervision of sentenced and un--sentenced inmates. And she's responsible for the overall operation(s) of her department.

23. Defendant, Janice   Henry, captain in unofficial and official capacity as a captain of the Delaware correctional center (D.C.C.) for the state of Delaware is legally responsible for the management and supervision of the overall operation(s) of her department.

24. Defendant, Stacey Hollis, counselor in unofficial and official capacity As A counselor of the Delaware correctional center (D.C.C.) For the state of Delaware is legally responsible for the management and supervision of the overall operation(s) of her department.

25. Defendant, C.M.S, correctional medical service, in unofficial and official capacity as the correctional health care service for inmates of Delaware correctional center (D.C.C.) For the state of Delaware., is legally responsible for the management and supervision of the overall operation(s) of the prison health care system.

26. Defendant, Ronald Holsterman, supervisor of counselors in unofficial and official capacity as supervisor of counselors for the state of Delaware aswell as the Delaware correctional center (D.C.C)., is legally responsible for the management and supervision of the overall operation(s) for his department.

## IV   FACTS

27.   On September 8th, 2006 at approximately 8:30p.m.
Defendant(s) Dave C. Rosenblum and P.O. Friedenreich
performed an illegal, unwarranted raid, detention,
Apprehension and or Arrest of plaintiff and several other
members of A predominately group of African American
males and illegally placing plaintiff on Drug mug.

Defendant(s) Dave C. Rosenblum and P.O. Friedenreich
were driving an unmarked dark colored Ford Taurus
when they pulled up on the group of African American
males who were not observed doing anything illegal.
The African American males were stationaried
in front of one of the males residence when
both officer(s) jumped out demanding everyone to
get down on the ground. An individual from the group
of African American males took off running., This
individual being the named plaintiff (Raymond E.
Blake). One of the officer(s) gave chase., This
officer being P.O. Friedenreich chased the plaintiff
while other officer (Rosenblum) stayed put with
the other members of the group And called for
back up. During the initial chase P.O. Friedenreich
seen the plaintiff discard what he believed to
be An object to A empty parking lot in
which plaintiff ran thru during the
chase

During the chase PO. Friedenreich ordered plaintiff to stop. Which plaintiff willfully obeyed. Several marked police cruisers and jump out vans surrounded plaintiff who at this time was on his knees with both hands placed behind his back. PO. Friedenreich handcuffed plaintiff and began to dig into plaintiff's pockets pulling out his cellular phones and money slamming items onto ground with such force that one of the cell phones broke in half. PO. Friedenreich turned plaintiff over to officer Hilliard who is a member of the Wilmington police department. Plaintiff was turned over for transportation to the central headquarters for processing. Upon entering the police cruiser for transportation another PO. by the name of Mark Lewis grabbed the plaintiff by the arm and took the key chain from around the plaintiff's neck. The key chain brandished a enterprise rental car insignia upon it along with various house keys. Officer Lewis asked the plaintiff where was his car parked? And the plaintiff informed the officer that he didnot own a car and he was not the renter of the vehicle nor was he a driver. officer Mark Lewis Asked the plaintiff where the car was parked? Plaintiff stated that he did not know. Officer asked the plaintiff if he locates the vehicle can he search it? Plaintiff said "No", because he was not the owner, but advised the officer to get consent from the owner a lady by the name of E. Karol Guy or just get a search warrant and

do as he pleases. Officer mark Lewis told plaintiff that he doesn't need a search warrant and he will search the vehicle anyway.

28. Plaintiff was transported to central head quarters where a search was performed on plaintiff person(s) revealing negative results. Plaintiff was found to be wanted in the superior court for a V.O.P upon a deljis check in the computer on plaintiff's name.

29. A hour later officer(s) Dave C. Rosenblum and P.O. Friedenreich reported to central where plaintiff was now stationaried. Plaintiff was taken into a small interview room where several questions were asked of plaintiff. Officer Rosenblum told plaintiff if he cooperated with giving up some information that the officer would make a phone call for the plaintiff that in return would make all of his troubles disappear.

30. Officer Rosenblum pulled out a small yellow envelope that contained (10) ten small ziplock bags of marijuana. Officer Rosenblum asked plaintiff if he recognized the contents of the envelope? Plaintiff advised that it looked like marijuana. Plaintiff told officer(s) that he recognized contents, because he smoked marijuana.

31.  OFFicer Rosenblum then pulled out another small yellow envelope that contained (5) Five small ziplock bags oF marijuana. OFFicer Rosenblum asked the plaintiFF iF he recognized the contents of this envelope? PlaintiFF said yes it's marijuana I threw (5) Five bags when I was running. OFFicer then advised the plaintiFF that he was doing great., And that they did indeed Found the bags in that parking lot that he ran thru. OFFicer Rosenblum told plaintiFF that he knew that the plaintiFF was only A user. And that they Found the (10) Ten bags of identical packaged marijuana by the crowd of AfricaN American Makes. OFFicer then went on to ask the plaintiFF who sold him the marijuana? plaintiFF advised the oFFicer that he would not tell on anybody, but he would indeed take owner-ship for his own drugs.

32.  OFFicer Rosenblum continued to ask questions about drug dealers in the neighborhood and guns around the rental car in which plaintiFF had the keychain. PlaintiFF advised oFFicer(s) that he didn't Know the drug dealers in the neighborhood and that he did not "know" about any guns by A car. PlaintiFF told oFFicer(s) that he and the Fellas were just hanging out For his birthday that Falls on September 9th drinking and having fun. OFFicer Rosenblum asked plaintiFF was he intoxicated as oF now and the plaintiFF advised him that he was under the in Fluence..

33.  OFFicer Rosenblum then pulled out A tape recorder and began to read the plaintiFF his Miranda warnings. When he asked the plaintiFF about being under the influence this second time., OFFicer Rosenblum covered the tape recorder up with his hand to block out the plaintiFF's response.

34.  OFFicer Rosenblum repeated same questions From initial questioning about the two small yellow envelopes which contained the small bags of marijuana. PlaintiFF advised that he had discarded (5) Five bags oF marijuana during initial Foot chase. When OFFicer Rosenblum queried about who sold plaintiFF the (5) Five bags PlaintiFF refused to cooperate. OFFicer(s) Rosenblum and P.O. Friedenreich told plaintiFF that they located the rental car and that he knew what was inside of it? PlaintiFF responded that he did not know what was inside of it., and that he was done answer questions and that he wanted legal representation. The interview was terminated at that point and oFFicer(s) told the plaintiFF that they had searched the vehicle and discovered A loaded (9) Nine millimeter along with Brass knuckles and A Freezer size bag which contained marijuana. OFFicer Rosenblum told plaintiFF that he hadn't seen Brass knuckles since the early (80'S) eighties and where did he purchase them From A Flea market or something? PlaintiFF advised oFFicer(s) that he didn't own any brass knuckles. OFFicer Rosenblum informed plaintiFF that he does now., iF he doesn't tell him who drove the vehicle

and who sold him the (5) Five bags of marijuana.
Plaintiff advised that he didn't drive the vehicle and
that he had never even stepped foot inside of the
vehicle. And he also informed both officer(s) that he
could not tell who sold him the marijuana, because someone
would kill him. Both officer(s) promised the plaintiff that
since he seemed like a good guy that he would only be
charged with Resisting Arrest, Loitering, And possession
of marijuana. Plaintiff signed All (3) three tickets at
that time. But then officer Rosenblom stated that the
only way that plaintiff would get the lesser charges was
to take his bussiness card and give him a call from jail
with some information that would help the plaintiff's case.
Officer Rosenblum gave the card to the plaintiff and told
the plaintiff that he was not going to confiscate any
of his money that was found inside of his pocket(s). And
also that the vehicle that the drugs and weapons
were found in would be returned to the owner Ms.
Karen Guy. Officer Rosenblum told the plaintiff A
Favor for A Favor.
35.   Plaintiff never called the telephone number that
officer Rosenblum gave him and in return was charged
with numerous Felonies and misdemeanors.

36.  Officer(s) threatened Ms. Karen Guy to give coerced
statement(s) on the plaintiff to assure his conviction.
Ms. Guy wrote letter(s) to Judge Peggy L. Ableman
as well as Mary M. Johnston explaining the threatening
telephone calls that she received by the Prosecutor
Shawn Martyniak as well as the officer(s).

37. Plaintiff advised his Public Defender Raymond D. Armstrong of what was taken place., And also that the motivation behind the threats was retaliation on behalf of the prosecutor due to A previous lawsuit filed on Shawn Martyniak for malicious prosecution some months prior. And that the prosecutor being involved in his case was A conflict of interest.

38. Public Defender Raymond D. Armstrong wrote Plaintiff A letter threatening him that if he proceeds with his pending lawsuit on the prosecutor that he would drop his case. And he told plaintiff in the letter that he was not receiving A conflict of interest and that he forsees him doing life in jail.

39. Plaintiff made copies of the letter and forwarded same to Judge Mary M. Johnston as well as Peggy L. Ableman and the Disciplinary Board of supreme court.

40. Plaintiff motioned to have current counsel removed from his case for ineffective counsel as well as fear of purposeful sabatoge from counsel who seemed to be in cohotes with prosecutor. Judge Mary M. Johnston denied plaintiff's motion and disregarded the copied letter that public Defender wrote plaintiff. Judge Peggy L. Ableman also refused to intervene in the illegalities of the plaintiff's case., she also failed to confront the letters that Ms. Guy written her explaining how the officers and prosecutor threatened her to make A false statement against plaintiff.

41. Upon being incarcerated awaiting trial plaintiff received extensive injuries in the facility he was being held in., That facility being the (H.R.Y.C.I) Howard R. Young correctional institution., which is managed and supervised by Raphael Williams who is overseen by Carl C. Danberg, Commissioner., James M. Baker, Mayor., Ruth Ann minner, Governor., etc...

Plaintiff was forced to sleep on A floor on the 2H pod for (9) nine months where Rats, mice, spiders, termites and other small life forms roamed rampantly. Grievances and letters were written to all said-above named Defendants whom none responded with positive results.

Also plaintiff was denied routine access to the law library on A regular basis. And when he was granted access plaintiff was forced to pay for all legal materials. At times when plaintiff did not have any funds on his inmate account., Legal materials were denied which is A clear federal violation on behalf of (warden) Raphael Williams as well as clerk of the Howard R. Young correctional Institution (Law Librarian) Angelo Johnson.

42. Plaintiff as well as several other inmates wrote massive amounts of complaints to Above-said Defendants exhausting all avenues in search of relief., which fell upon deaf ears producing negative results. It got to the point that plaintiff wrote so much and filed A 1983 Class Action Lawsuit 1:07-CV-405 JJF on above-said defendant(s) that the warden of H.R.Y.C.I had plaintiff transferred out of his facility and

43. Upon residing at the Delaware correctional center., Plaintiff received more arduousness hardships there. Plaintiff was denied access to the law library by the clerk of the law library Manonchek C. Young aswell as his supervisor Michael Little. Plaintiff aswell as other unsentenced detainees wrote massive amounts of grievances as well as letters supporting their stance towards the denial. The above-said defendant(s) aswell as warden Thomas Carroll of the (D.C.C.) received notice explaining the unjust and or illegalities of the denial to self research and to vital legal materials, which once again produced negative results.

44. Plaintiff was prevented and or denied telephone access which would have allowed him to contact his family and attorney by counselor of Delaware Correctional center Ms. Stacey Hollis., who refused to program plaintiff's telephone numbers for nearly (1)one whole month. Plaintiff again wrote several grievances and supporting letters with over (40) forty signatures of witnesses to grievance committee, warden, aswell as supervisor of (D.C.C.)'s counselors Mr. Ronald Holsterman., Once again negative results were produced.

45.    While in confinement at the Delaware correctional center plaintiff received A spider-bite that inter--ferred with his health. Plaintiff filled out sickcall slips to C.M.s and or medical slips explaining the dire need of medical attention in which he was never serviced. Plaintiff filled out grievances on the matter as well. Plaintiff informed Sgt. Natasha L. Hollingsworth of the severness of his health situation and she told plaintiff to get the "Fuck out of her face" and she hopes he dies or the spider bite kills plaintiff.
    Plaintiff reported the verbal assault aswell as the lack of medical attention to captain Janice Henry aswell as Lt. Bernard williams and the warden Thomas Carroll. And once again negative results were produced. And because of written letters and grievances plaintiff received mounts of retaliation from above-said defendant(s). One scenerio plaintiff was physically Assaulted by Ms. Natasha Hollings--worth which to was documented.

46.    Plaintiff has written several letters and or motions to Joseph R. Biden III aswell as carl c. Danberg explaining his situation of how he was illegally detained by officer(s) who placed him in prison aswell as the unjust treatment he endured while inside of the prison(s)., Once again negative results were produced.

47. Plaintiff has written Numerous letters to Ruth Ann minner explaining to her about the poor chiefing on behalf of police chief Michael J. Szczerba., as well as the lack of preventive measures or policies to police officers. Plaintiff explained to Governor minner in a letter dated June 28th, 2007 that, because there are not set forth preventive measures or policy that would assure just treatment on behalf of African American males in the inner city by european officers ; he and many other African Americans suffer the "back lashes" of this failure to prevent; Once again negative results were produced.

48. Plaintiff wrote letters to displinary board as well as forwarded threatening letters that public Defender Raymond D. Armstrong written him., Displinary board immediately removed Armstrong from counsel and provided plaintiff with brand new counsel., whom helped plaintiff overcome the hurdle of malicious prosecution on behalf of Shawn Martyniak, Mary M. Johnston, Peggy L. Ableman and other above-said defendant(s). During trial evidence was produced that Detective Brown tampered with evidence as well as evidence that officer Rosenblum altered police report and sworn Affidavit to obtain A solidified conviction of plaintiff. Evidence also came forth that state's witness Karen D. Guy was coerced by prosecutor and police officer(s) to obtain conviction of plaintiff.

49. Plaintiff had A favorable decision at trial. A not guilty verdict was entered on behalf of plaintiff for all Felony charges. And A guilty verdict in behalf of plaintiff for (2) two misdemeanor offenses.

Plaintiff was incarcerated for (10) Ten months from September 8th, 2006 to July 20th, 2007.

## Standard of Review
## Memorandum of LAW

50. Heck v. Humphrey, 114 S.ct 2364 (1994)

Held: in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by A federal court's issuance of A writ of habeas corpus, 28 U.S.C. §2254. A claim for damages bearing that relationship to A conviction or sentence that has not been so invalidated is not cognizable under §1983. Preiser v. Rodriguez, 411 U.S. 475, 494, 93 S.ct. 1827, 1838-39, 36 L.Ed. 2d 439, and Wolff v. McDonnell, 418 U.S. 539, 554, 94 S.ct. 2963, 2973-74, 41 L.Ed. 2d 935, distinguished.

The foregoing conclusion follows upon recognition that the common law of torts provides the appropriate starting point for the §1983 inquiry, see carey v. Piphus, 435 U.S. 247, 257-258, 98 S.ct. 1042, 1049-1050, 55 L.Ed. 2d 252; that the tort of malicious prosecution, which

provides the closest analogy to claims of the type
considered here, requires the allegation and proof of
termination of the prior criminal proceeding in favor
of the accused, see, e.g., Carpenter v. Nutter, 127
cal. 61, 59 P. 301·, and that this court has long been
concerned that judgments be final and consistent and
has been disinclined to expand opportunities for coll-
-ateral attack on criminal convictions, see, e.g., Parke
v. Raley, 506 U.S. 20, 113 S. ct. 517, 121 L. Ed. 2d 391.,
also see: Terry v. state of ohio, 88 s. ct 1868 (1968)
[33,34] We conclude that the revolver seized from Terry
was properly admitted in evidence against him. At the time
he seized petitioner and searched him for weapons, officer
McFadden had reasonable grounds to believe that petition-
-er was armed and dangerous, and it was necessary for
the protection of himself and others to take swift
measures to discover the true facts and neutralize
the threat of harm if it materialized. The policeman
carefully restricted his search to what was appropriate
to the discovery of the particular items which he
sought. Each case of this sort will, of course, have to
be decided on its own facts. We merely hold today
that where a police officer observes unusual conduct
which leads him reasonably to conclude in light of his
experience that criminal activity may be afoot and
that the persons with whom he is dealing may be armed
and presently dangerous, where in the course of investi-
-gating this behavior he identifies himself as a
policeman and makes reasonable inquiries, and where

nothing in the initial stages of the encounter serves
to dispel his reasonable fear for his own or others'
safety, he is entitled for the protection of himself and
others in the area to conduct a carefully limited search
of the outer clothing of such persons in an attempt
to discover weapons which might be used to assault him.
        Such A search is A reasonable search under the
Fourth Amendment, and any weapons seized may properly
be introduced in evidence against the person from whom
they were taken., also see: <u>WOODY V. STATE</u>, 765 A. 2d
1257 (2001). [17] Having concluded that the facts cited
by the officers as forming their basis for reasonable
suspicion did not stem from an illegal detention, we next
address whether it is proper to consider an individual's
unprovoked, headlong flight as A factor in the reasonable
suspicion analysis. As previously stated, law enforcement
officers may approach and ask questions of an individ-
ual, without reasonable articulable suspicion that crim-
-inal activity is a foot. The individual, however, may not
be detained and may walk or even run away. Refusal to
answer the officer's inquiry can not form the basis
for reasonable suspicion. see <u>Royer</u>, 460 U.S. at 497-98,
103 S.Ct. 1319. Moreover, in Jones, we stated that "[i]f
an officer attempts to seize someone before possessing
a reasonable and articulable suspicion, that person's
actions stemming from the attempted seizure may not be
used to manufacture the suspicion the police lacked
initially." <u>Jones</u>, 745 A. 2d at 874. We are presented
here with A different situation, however, because woody
fled before the officers initiated any contact with him.

Also see: <u>Franks v. Delaware</u>, 98 S. Ct. 2674 (1978).

<u>Syllabus</u> *

Prior to petitioner's Delaware state trial on rape and related charges and in connection with his motion to suppress on Fourth Amendment grounds items of clothing and a knife found in a search of his apartment, he challenged the truthfulness of certain factual statements made in the police affidavit supporting the warrant to search the apartment, and sought to call witnesses to prove the misstatements. The trial court sustained the state's objection to such proposed testimony and denied the motion to suppress, and the clothing and knife were admitted as evidence at the ensuing trial, at which petitioner was convicted. The Delaware supreme court affirmed, holding that a defendant under no circumstances may challenge the veracity of a sworn statement used by police to procure a search warrant. Held: where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment, as incorporated in the Fourteenth Amendment, requires that a hearing be held at the defendant's request. The trial court here therefore erred in refusing to examine the adequacy of petitioner's proffer of misrepresentation in the warrant affidavit. Pp. 2676-2677, 2681-2685.

[1,2] In the present case the supreme court of Delaware held, as a matter of first impression for it, that a defendant under no circumstances may so challenge the

veracity of a sworn statement used by police to procure a search warrant. We reverse, and we hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the Defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit., Also see: Com. v. Alexander, 647 A.2d 935 (Pa. super. 1994) [1] Our supreme court, in deciding Pickron, acknowledged both the Green and Griffin decisions yet chose not to allow a warrantless search of a parolee's residence based upon reasonable suspicion without the consent of the owner or a statutory or regulatory frame- -work governing the search. The court explained its holding by stating "we recognize that there are no safeguards to protect the limited fourth amendment rights of probationers and parolees if their supervision is left entirely to the discretion of individual parole officers." Pickron, 634 A.2d at 1098. We note that since the Pickron decision there has not been passage or promulgation of a statute or regulation

authorizing warrantless searches of parolee's premises or setting forth the framework of when such a search can be conducted. Consequently, the search conducted here, even if supported by a reasonable suspicion that drugs would be found, violates the Pickron decision. As such, the suppression court erred in not granting appellant's suppression motion.

[2] The commonwealth attempts to argue against the application of Pickron by pointing out that in Pickron the suppression court had concluded that the parole agents had switched hats and become "stalking horses" for the police, while in the present case the suppression court made the contrary conclusion. This assertion is correct. The suppression court in Pickron did conclude that the agents had become stalking horses for police, in effect searching for evidence of the commission of new crime without a warrant and without probable cause, while the suppression court below concluded that the agents in this case had not become stalking horses for the police. However, we do not see significance of this conclusion in light of the specific holding of Pickron. Our reading of Pickron does not lead us to conclude that the suppression court's finding was an essential element of the decision. Such a conclusion may have been relevant prior to Pickron, but the court's holding in Pickron states that warrantless searches of a parolee's residente, even when supported by reasonable suspicion, are prohibited by the Fourth amendment without the consent of the owner or passage of a statutory framework. No where in this rather explicit

holding does the court include the requirement that the agents be found to have been "stalking horses" prior to the prohibition taking effect. As such, we are unper-suaded by the commonwealth's argument.

[3,4] The commonwealth next argues that the Philadelphia Adult Probation Department had an official policy[2] requiring search of a parolee's residence upon arrest when the arresting agent has information that contraband was present or if the subject has such a background. The commonwealth apparently believes that this "official policy" meets our Supreme Court's mandate that there be a statutory or regulatory framework in place. We can not agree. clearly, even the commonwealth can not argue that the "official policy" is statute. Reference to "statute" by the supreme court suggests to us legislation passed by the legislature and signed into law as well as publication in the Penn-sylvania statutes complete with a title and section number. Similarly, regulatory framework suggests to us similar introduction and passage by an appropriate state body along with publication. In Griffin v. Wisconsin, supra, the apparent genesis of this concept, regulations had been promulgated, pursuant to statute, by the Wisconsin State Department of Health and social services. The regul-ation in question was published at wis. Admin. Code HSS §§ 328.21 (4) and 328.16 (1). See, Griffin, 483 U.S. at 871, 107 S.ct. at 3167. Consequently, the "official policy" of the Philadelphia Adult Probation Department notwith-standing, we cannot conclude that the requirements stated by our Supreme Court in Pickron have been met. To prevent further confusion, we hereby hold that the

"Statutory or regulatory framework" referred to in
Pickron requires the passage of a statute or regulation
by the appropriate legislative process complete with
publication in either the Pennsylvania Statutes or Penn-
sylvania Code. Since the search in question was without
consent and not authorized by such statute or regulation,
under Pickron, it must be deemed illegal., also see:
<u>Flonnory v. state</u>, Del. supr., 805 A. 2d 854 (2001)

II.

[1] The United States supreme court held in <u>Terry v. ohio</u> [3]
that a police officer may seize an individual for an investi-
gatory purpose of limited scope and duration only when that
detention is supported by "a reasonable and articulable
suspicion of criminal activity." [4] A trial court's deter-
mination of whether the state possessed a reasonable and
articulable suspicion before detaining an individual is
an issue of both law and fact. [5] In this case, there are
no significant disputes over the issues of fact. Therefore,
we review de novo the decision of superior court for
error in the formulation and application of the law: [6]
[2] The right of individuals to be free from unlawful
searches and seizures is secured in Delaware by both the
guarantee of an individual's right under the Fourth
Amendment to the United States Constitution to be "Secure
in their persons, house, papers and effects, against
unreasonable searches and seizures" [7] and the
nearly identical language of Article I, section 6 of
the Delaware constitution. [8] We have held that the
Delaware Constitution provides a greater protection
for the individual than the United states constitution

in the determination of whether a seizure by the state has occurred.[9] In *Terry*, the United States supreme court held that a seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty" of an individual.[10] That court clarified this standard in *michigan v. chesternut*[11] when it declared that a seizure occurs whenever the conduct of a police officer would "communicate to a reasonable person that he was not at liberty to ignore the police presence and go about his business."[12] Although the United States supreme court carved a significant exception to chesternut in *california V. Hodari D.*,[13] we determined in *Jones V. state* that Article I, Section 6 of Delaware Constitution offered greater protection than the Fourth Amendment, requiring the Delaware courts to continue to apply a standard similar to that set forth in chesternut.[14]

[3, 4] Thus, our focus must be on whether, and at what point, a reasonable person would have believed that he or she was not free to ignore a police presence.[15] In the case before us, there is uncontested evidence that three police officers approached the oldsmobile in which Flonnory was sitting and that they took up positions on three sides of the vehicle. A reasonable person in Flonnory and Barbour's situation could only have believed that the conduct of the officers communicated to them that they were not at liberty to go about their business.[16] Thus, at the moment that the officers approached in this manner, they had detained the individuals in the car which constituted a

Seizure of the occupants' persons under Article I, section 6 of the Delaware constitution.

## III.

[5] Having established that the actions of the police constituted a seizure of Appellant's person, this court must next determine whether or not the police possessed the reasonable and articulable suspicion necessary to conduct an investigatory stop under both the Fourth Amendment of the United States constitution and Article I, section 6 of the Delaware constitution.[7] To determine whether a reasonable suspicion exists, we must "examine the totality of the circumstances surrounding the situation 'as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts.'"[18] In this instance, the totality of the circumstances fails to suggest the presence of the reasonable and articulable suspicion required for a police intrusion.

[6] At the conclusion of the suppression hearing, the judge presiding over the proceeding noted the existence of a "legion" of cases" in which courts have found that an anonymous tip standing alone does not give rise to the reasonable suspicion required for a Terry stop.[19] Nevertheless, the judge went on to decide that the police were not in violation of the Fourth Amendment or Article I, section 6 because the circumstances provided the reasonable suspicion necessary for a seizure. Specifically, the judge cited the fact that the officers were able to confirm the anonymous caller's description of the vehicle and its

occupants. He found that this confirmation supported the conclusion that the caller's allegation of illegal activity was somehow more reliable and thus gave the police the reasonable suspicion necessary to detain Flonnory and Barbour. However, the simple confirmation of readily observ- -able facts does not enhance the reliability of an anony- -mous tip to the level required for a finding of reasonable suspicion. In a decision handed down after the judge made his ruling at the suppression hearing, the United States Supreme Court held in Florida v. J.L.[20] that an anonymous tip that provides the police with no predictive information that they may use to assess the reliability and knowledge of an informant is insufficient to raise reasonable suspicion.[21] also see: Purnell v. State, Del. Supr., 832 A.2d 714 (2003) [19] The Supreme Court held in this context one cannot reasonably describe car keys as "contraband". Webster's Dictionary defines contraband as "goods or merchandise the importation, exportation, or sometimes possess- -ion of which is forbidden."[43] The cases that the State cites all deal with instances where a police officer felt or saw drugs, or what the officer believed to be drugs. Clearly, drugs are contraband. In Purnell's case, however, the officers felt keys and a keypad, which they clearly believed to be keys and a keypad. Neither keys nor a keypad, in this situation, are contraband. The State's reliance on Mosley and Dickerson, therefore, lacks merit., also under Heggenmiller v. Edna Mahan correctional institution for women, 128 Fed. Appx. 240 C.A. 3 (N.J.) (2005) **4 The Supreme Court held that it is well- -settled that prison officials have a duty under the

Eighth Amendment to "take reasonable measures to guarantee the safety of inmates." _Farmer_, 511 U.S. at 832 (internal quotations omitted).

**5    B. Failure to Train

The Supreme Court held that supervisory liability on an Eighth Amendment claim for failure to properly supervise or train is governed by this Court's decision in _Sample v. Diecks_, 885 F. 2d 1099 (3d Cir. 1989) (holding supervisory liability may attach if supervisor implemented deficient policies and was deliberately indifferent to the resulting risk)., see also _city of canton v. Harris_, 489 U.S. 378, 109 s. ct. 1197, 103 L. Ed. 2d 412 (1989). In Sample, we held that a prison official may be liable under the Eighth Amendment if (1) existing policy or practice creates an unreasonable risk of Eighth Amendment injury., (2) the supervisor was aware that the unreasonable risk was created., (3) the supervisor was indifferent to that risk., and (4) the injury resulted from the policy or practice. * 247 _Sample_, 885 F. 2d at 1118., see also _Beers-capitol_, 256 F. 3d at 134., also under _cobb v. Aytch_, 643 F. 2d 946 Supreme Court held that pretrial detainees are restrained only as a means to ensure their eventual presence at trial and sentencing _Norris v. Frame_, 585 F. 2d. 1183, 1187-88 (3d. Cir. 1978)., see A. Highmore, Jr., A Digest of Doctrine of Bail in civil and criminal cases 192 (1783). Thus they retain several constitutionally protected liberty interests relevant to the conditions of their confinement that are not fully available to sentenced inmates. First, Pretrial detainees have a constitutionally protected right to the effective assistance of counsel. This Sixth Amend

-ment right attaches at the initiation of criminal proceedings, <u>Kirby v Illinois</u>, 406 U.S. 682, 92 S.ct 1877, 1882, 32 L.Ed. 2d. 411 (1972).; see <u>Brewer v. Williams</u>, 430 U.S. 387, 398-99, 97 S.ct. 1232, 1239, 51 L.Ed. 2d. 424 (1977) (stressing importance of protecting right to counsel at pretrial stages), and continues through sentencing. <u>Mempa v. Rhay</u>, 389 U.S. 128, 134-37, 88 s.ct. 254, 256-58, 19 L.Ed. 2d 236 (1967). We have already noted the trial court's extensive findings on the effect of the transfers on pretrial detainees' access to legal representation, and the the consequent infringement on their exercise of their right to counsel, as protected by the sixth and Fourteenth Amendments. We agree with the District court that the transfers of pretrial detainees, at a minimum, significantly interfered with their access to counsel. We note, however, that the pretrial detainees enjoy the benefits of other constitutionally protected liberty interests which were infringed upon by the transfers of those inmates to distant state facilities., also the supreme court held that the sixth Amendment provides that "[I]n all criminal prosecutions, the accused shall enjoy a right ... to have the assistance of counsel for his defence". U.S. Const. amend. VI. In <u>michigan v. Jackson</u>, 475 U.S. ~~const.~~ 625, 636, 106 s.ct. 1404, 89 L.Ed. 2d 631 (1986), the supreme court held that, in accord--ance with the sixth Amendment, "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his rights to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation

The right to counsel, however is "offense specific";
Also the supreme court held that the trial court
observed, and we agree, that pretrial detainees have
federally protected liberty interests that are different
in kind from those of sentenced inmates. Unlike
sentenced prisoners, who under _Meachum v. Fano_, 427
U.S. 215, 96 S.Ct. 2532, 49 L.Ed. 2d 451 (1976),
and _montanye v. Haymes_, 427 U.S. 236, 96 S.Ct.
2593, 49 L.Ed. 2d. 466 (1976), must look to state
law for the protection of their personal liberties,
pretrial detainees have liberty interests firmly grounded
in Federal constitutional law., Also under 466 U.S.
668, 687 (1984). The supreme court held that "[T]he
purpose of the effective assistance guarantee of
the Sixth Amendment is ... to ensure that criminal
defendants receive A fair trial." Id. at 689. Strickland
states that A court must: ... judge the reasonableness
of counsel's challenged conduct on the facts of the
particular case, viewed as of the time of counsel's
conduct. A convicted defendant making a claim of ineff-
-ective assistance must identify the acts or omissions
of counsel that are alleged not to have been the result
of reasonable professional judgement. The court must
then determine whether, in light of all circumstances,
the identified acts or omissions were outside the
wide range of professionally competent assistance.
In making that determination, the court should keep
in mind that counsel's function, as elaborated in
prevailing professional norms, is to make the

case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, also under _Towns v. Smith_, 395 F.3d 251, 258-60 (6th cir. 2005)(counsel's failure to conduct reasonable investigation into "Known and potentially important alibi witness" was prejudicial because investigation would have produced reasonable probability of defendant's acquittal); also under _Evancho v. Fisher_, 423 F.3d 347 C.A. 3 (Pa.), 2005 [3][4][5] Here, under the liberal notice pleading standard of _Rule 8(a)_, Evancho's amended complaint fails to allege facts that, if proven, would show attorney General's Fisher's personal involvement in Evancho's transfer. The Third Circuit has held that a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible. _Boykins v. Ambridge_ Area sch. Dist., 621 F.2d 75, 80 (3d cir. 1980)(citing _Hall v. Pa. State Police_, 570 F.2d 86, 89 (3d cir. 1978))

## V. LEGAL CLAIMS

51. Defendant(s) C.M.S, Thomas Carroll, Natasha L. Hollings-worth, Janice Henry, and Stacey Hollis are all in direct or indirect violations for knowingly and intentionally disregarding the plaintiff's dire medical need which was a spider bite that caused interference with his health. All above-said defendant(s) with requisite state of mind are liable for the reckless disregard and deliberate

53. Defendant(s) Ruth ANN minner, Carl C. Dan berg, Joseph R. Biden III, James m. Baker, Michael J. Szczerba, Shawn Martyniak, Dave C. Rosenblum are All liable for the reckless disregard and deliberate indifference for civilians right to be free from illegal searches and seizures by police officers and other government officials, by not putting in place preventive policy measures for the rampant mis--conduct in New castle, county and in wilmington, Delaware., Targeting African Americans and other minorities violating 42 U.S.C. §1981 Equal rights under the law. These above--said Defendant(s) are all equally responsible for directly or indirectly knowingly and intentionally conspiring with eachother in the violation of plaintiff's civil and constitut--ional rights. Plaintiff is A minority (African American) male who has been maliciously Apprehended, Detained, and imprisoned due to A lack of preventive policy protecting minorities against the beastism of european officer(s)., who target minorities in the inner city or urban areas in place them in A category of All being criminals. This lack of policy played A major role and was the actual moving force in plaintiff's consequental suffering.

54. Defendant(s) Ruth ANN minner, Carl C. Danberg, Joseph R. Biden III, James m. Baker, Michael J. szczerba, Shawn martyniak, Drug mug, Dave C. Rosenblum, mark Lewis, _____ Frieden reich, _____ Brown, Raymond D. Armstrong, mary m. Johnston, Peggy L. Ableman with requisite and or culpable state of mind are all in direct or indirect violation(s) for willingly and or knowingly conspiring with

Eighth and Fourteenth Amendments aswell as his
Constitutional rights by allowing the Plaintiff to be
placed on drugmug and internet showing and or publishing
Plaintiff's picture and broadcasting and or creating
massive publicity in plaintiff's privacy., without ever
seeing or observing Plaintiff purchase or sell any narcotics
which is the actual criteria for the Delaware's drugmug.,
And maliciously imprisoning as well as maliciously
prosecuting Plaintiff under false pretense., All above-
-said Defendant(s) are liable for above-mentioned acts.,
by not adhering to job duties in the supervision of
employees and not confronting the wrongs of co-workers;
who all knowingly and willfully conspired in the malicious
prosecution and or false indictment of plaintiff aswell
as forwarding "blatant" or bold threats to plaintiff all
above-said Defendant(s) are liable for these wrongs. All
Defendant(s) are in direct violation of §1985 aswell as
§1986 under 42 U.S.C. § and are not protected under 11th
Amendment, immunity only shield prosecutors when in
courtrooms not concerning AG office as far as Policy
customs and procedures., management and supervision
over employees. §1986 Action for Neglect to prevent; Every
person, having knowledge that any of the wrongs conspired
to be done, and mentioned in section 1985 of this title, or
are about to be committed and having power to prevent
or aid in the preventing commission of the same., Neglects
or refuses so to do, if such wrongful act be committed,
shall be liable to the party injured., where the
party in question being the plaintiff; was injured

due to a lack of police education in dealing with minorities, lack of supervision and poor management in each department etc... All defendant(s) played A major role in not upholding civil and constitutional statutory frame work that has previously been set forth by legislature and or congress that would have detered the negative moving force which was created by All of the Defendant(s)., violating plaintiff's clearly established Constitutional and civil rights; which now plaintiff suffers the Ramifications of the original acts. As A direct consequence of Defendant(s) unconstitutional disclosure, and invasion of privacy, the injuries to plaintiff consist of wrongful imprisonment, causing defamation of character which caused plaintiff to be terminated from his employment due to massive publicity in A Negative light; as well as term-ination of engagement to fiancé, mental and physical duress, seperation of family, loss of parental bonding and influence in the developmentally formative years of child-rearing, loss of income, loss of time and depriv--ation of society as well as post traumatic stress.

55. Defendant(s) Manonchek c. Young, Michael Little, Angelo Johnson, Raphael williams, Thomas carroll, Janice Henry, stacey Hollis and Ronald Holsterman with requisite state of mind knew of and deliberately disregarded plaintiff civil and constitutional rights by transferring plaintiff out of Howard R. Young correctional institution and placing him in Delaware correctional center due to pending grievances and or litigations that plaintiff previously filed on warden Raphael williams as well as other griev-

- said defendant(s). All above-said defendant(s) are in direct violation of violating plaintiff's eighth, sixth, and fourteenth Amendment rights by creating stringent hurdles for plaintiff in preventing him communication with his attorney aswell as denial of utilizing the law library to effectively establish a adequate defence for his upcoming trial. All above-said defendant(s) knowingly and intentionally disregarded the many letters and griev--ances forwarded to them by plaintiff which in return caused massive injuries to plaintiff. Raphael williams and Thomas carroll conspired in the transfer of plaintiff from Howard R. Young Correctional Institution to Delaware correctional center on 6-2-07 which caused plaintiff to loose contact with his family members and attorney which soured his preperation for upcoming trial scheduled for 6-26-07.

56. Defendant(s) Natasha L. Hollingsworth, Janice Henry, Carroll Thomas, Jaseph R. Biden, Mary M. Johnston, Peggy L. Ableman, carl C. Danberg and Raymond D. Armstrong are all in violation for violating plaintiff's Civil and constitutional rights for knowingly and intentionally with requisite state of mind disregarding his dire complaint(s) which in return caused massive injury to plaintiff which plaintiff now suffers the Ramifications of the original acts. Defendant Raymond D. Armstrong is in violation of violating plaintiff's sixth, eighth and fourteenth Amendment rights for providing ineffective counsel aswell as forwarding threaten-

injuries. Defendant Raymond D. Armstrong is also in violation for maliciously disregarding the many letters, grievances and or motions filed by plaintiff in regards to his illegal imprisonment as well as blatant abuse of prosecutorial authority, because Defendant Armstrong never adhered or took plaintiff letters and motions into consideration, plaintiff never obtained a bail reduction or any other relief which dragged on for (10) Ten months of deprivation of society as well as other deprivations. Defendant Natasha L. Hollingsworth is in direct violation for physically assaulting aswell as insulting plaintiff., she is also in violation of retaliating against plaintiff who filed grievances on her, which in return caused mounts of retaliation where plaintiff indured mounts of write-ups and excessive lock downs, due to his speaking out against her wrong doings. Defendant Natasha L. Hollingsworth with requisite and or cupable state of mind turned A blind eye aswell as imposed harsh and or threatening vulgar language towards plaintiff who was in need of dire medical assistance; which was A clear violation of her employment position aswell as plaintiff civil and constitutional rights. All above-said Defendant(s) with requisite state of mind deliberately disregarded plaintiff's letters, grievances aswell as civil and constitutional rights. And all Defendants are at fault in conspiring knowingly and intentionally with reckless disregard in the violation of plaintiff rights. All above-said defendant(s) created the moving force behind plaintiff suffered injuries.

57. Plaintiff has established an Eighth Amendment violation as well as several other violations on behalf of above-said Defendant(s), because plaintiff has crossed the imposed hurdle of showing that he faced a "substantial risk of harm" to which the above-said Administrative Defendant(s) all acted with "deliberate indifference." Id at 828-29. The predicate substantial risk of harm was objectively serious. Plaintiff has shown, in turn, that prison officials "knew of" and disregarded all above mentioned facts of ill treatment being inflicted upon him while inside of prison. All above-said Defendant(s) acted with A sufficiently culpable state of mind. <u>Beers-capitol</u>, 256 F. 3d. at 125.

58. Government agents and officials are required to follow appropriate procedures and when government agents knowingly and intentionally decide to violate and or "deprive any person of life, liberty, or property" the Due Process clause promotes fairness in such decisions. And by barring certain government actions regardless of the fairness of procedures used to implement them, e.g., Rochin, supra, it serves to prevent governmental power from being "used for purposes of oppression," <u>Murray's Les v. Hobokenland & improvement co.</u>, 18 How. (59 u.s.) 272, 277, 15 L.Ed. 372 (1856)(discussing Due Process clause of Fifth Amendment).

59. All above-said defendant(s) are in violation of violating Plaintiff's Due Process aswell as creating stringent circumstances and or hurdles for plaintiff at the most criticalist stages of his pretrial proceedings.

60. Plaintiff Does not seek to hold the united state treasury Department liable for the alleged Deprivations in the instant $1983 action., He seeks to hold the individual Defendant(s) responsible for the alleged wrongdoings, in violation of his clearly Established constitutional Rights Guaranteed under The U.S. Constitution.

## VI. INJURY

61. Above-said and named Defendant(s) actions caused ongoing injuries, which Plaintiff suffers the "Ramificat-ions" of the original Acts., As A direct consequence of the Defendant's unconstitutional disclosure, And failure to establish or put in place preventive policies. The injuries to plaintiff consist of: Mental and physical duress; Invasion of privacy; mass infamous publicity; loss of recreational privileges; loss of time and or deprivation of society; loss of income, employment, engagement to fiancé; Deprivation of education, Cruel and unusual punishment; Post traumatic stress; Physical and mental Torment; unkempt health care system; Denial to adequate health care., wrongful imprisonment; causing Slander and Defamation of character; seper-ation of family; loss of parental bonding and influence in the developmentally formative years of child rearing.

62. False allegations against plaintiff were dismissed, defeated and or terminated, therefore granting Plaintiff to proceed prose in civil suit since decision was far-orable in plaintiff's behalf. see: _Carpenter v. Nutter_, 127 cal. 61, 59 P. 301; also _Heck v. Humphrey_, 114 S.Ct. 2364 (1994).

63. Under 42 U.S.C. §1981(a) Plaintiff was violated, because he is a member of A racial minority group who defendants intended to discriminate against either directly or indirectly on the basis of his race and minoritorial status in the initial phase of invest-igation in wilmington, Delaware. _Brown v. Phillip Morris inc._, 250 F. 3d 789, 797 (3d Cir. 2001).

64. Because the supervisor's implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions that caused "the moving force" behind the harm suffered by the plaintiff. _Sample v. Diecks_, 885 F. 2d 1099, 1117-118 (3d. cir. 1989); see also _city of Canton v. Harris_, 489 U.S. 378 (1989); _Heggenmiller v. Edna Mahan corr. inst. For Women_, No. 04-1786, 128 Fed. Appx. 240 (3d. cir. 2005). They are All in direct or indirect conspiracy to violate plaintiff's civil and constitutional rights; "THEY" being the above-said Defendant(s).

★ Plaintiff respectfully request pleading liency under _Haines v. Kerner_, U.S. 111 (1972).

WHEREFORE, Plaintiff respectfully prays that this court enter judgement, granting plaintiff:

(1) A declaratory judgement that the Defendants' acts, described herein, violated Plaintiff's rights under the United States constitution.

(2) A preliminary and permanent injunction which: (a.) Prohibits the Defendants, their successors, agents, and employees, and all other persons in active concert and participation with them from harassing, threatening or retaliating in any way against plaintiff, because he filed this action, or against any person, because they have submitted affidavits or testimony in this case on behalf of the plaintiff.

(3) <u>Compensatory Damages</u> in the amount of FIVE MILLION DOLLARS ($5,000,000.00) From Defendant, Ruth Ann Minner, Governor, to be paid to plaintiff for "consequential suffering".

(4) <u>Punitive and compensatory</u> Damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00) From Defendant, Carl C. Danberg, commissioner, to be paid to plaintiff for "consequential suffering".

(5) <u>Punitive Damages</u> in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), From Defendant, Joseph R. Biden III, Attorney General., to be paid to plaintiff for "willfully conspiring" with above-said Defendant(s) to violate plaintiff's civil and constitutional rights aswell as plaintiff's "consequential suffering".

(6) <u>Punitive Damages</u> in the amount of FIVE MILLION DOLLARS ($5,000,000.00), From Defendant, James M. Baker, Mayor., to be paid to plaintiff for "willfully conspiring" with above-said Defendant(s) to violate plaintiff's civil and constitutional rights aswell as plaintiff's "consequential suffering".

(7) <u>Punitive Damages</u> in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), From Defendant, Michael J. Szczerba, Police chief; to be paid to plaintiff for "willfully conspiring" with above-said Defendant(s) to violate plaintiff's civil and constitutional rights aswell as plaintiff's "consequential suffering".

(8) <u>Punitive Damages</u> in the amount of THREE HUNDRED AND FIFTY THOUSAND DOLLARS ($350,000.00), From Defendant, Shawn Martyniak, Deputy Attorney General., to be paid to plaintiff for "malicious prosecution" and "willfully conspiring" with above-said Defendant(s) to violate plaintiff's civil and constitutional rights aswell as plaintiff's "consequential suffering".

(9) <u>Punitive Damages</u> in the amount of ONE POINT TWO MILLION DOLLARS ($ 1. 2,000,000.00), From Defendant, Drug MUG, (City Counsel)., to be paid to plaintiff for "invasion of privacy","willfully conspiring" with above-said Defendant(s) to violate plaintiff's civil and constitutional Rights aswell as plaintiff's "consequent--ial suffering".

(10) <u>Punitive Damages</u> in the amount of ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($ 150,000.00), From Defend--ant, Dave C. Rosenblum, senior police officer., to be paid to plaintiff for "willfully conspiring" with above--said Defendant(s) to violate plaintiff's civil and constitutional Rights aswell as plaintiff's "consequential suffering".

(11) <u>Punitive Damages</u> in the amount of ONE HUNDRED THOUSAND DOLLARS ($ 100,000.00), from Defendant,_____ Friedenreich, Probation officer., to be paid to plaintiff for "willfully conspiring" with above-said Defendant(s) to violate plaintiff civil and constitutional Rights as well as plaintiff's "consequential suffering".

(12) <u>Punitive Damages</u> in the amount of ONE HUNDRED AND TEN THOUSAND DOLLARS ($ 110,000.00), From Defendant, Mark Lewis, Probation officer., to be paid to plaintiff for "willfully conspiring" with above-said Defendant(s) to violate plaintiff's civil and constitutional Rights aswell as plaintiff's "consequential suffering".

(13) <u>Punitive Damages</u> in the amount of **THREE** HUNDRED AND FIFTY THOUSAND DOLLARS ($350,000.00), From Defendant, Raymond D. Armstrong, Assistant Public DE- -FENDER., to be paid to plaintiff for "Maliciously and willfully conspiring" with above-said Defendant(s) to violate plaintiff's civil and constitutional Rights aswell as plaintiff's "consequential suffering".

(14) <u>Punitive Damages</u> in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00), From Defendant, _____ Brown, Police officer., to be paid to plaintiff for "willfully conspiring" with above-said Defendant(s) to violate plaintiff's civil and constitutional Rights aswell as plaintiff's "consequential suffering".

(15) <u>Punitive Damages</u> in the amount of FIVE HUNDRED AND FIFTY THOUSAND DOLLARS ($550,000.00), From Defendant, Mary M. Johnston, superior court Judge., to be paid to plaintiff for "willfully conspiring" with above- -said Defendant(s) to violate plaintiff's civil and constitutional Rights aswell as plaintiff's "consequent- -ial suffering".

(16) <u>Punitive Damages</u> in the amount of FIVE HUNDRED AND FIFTY THOUSAND DOLLARS ($550,000.00), From Defendant, Peggy L. Ableman, superior court Judge., to be paid to plaintiff for "willfully conspiring" with above- -said Defendant(s) to violate plaintiff's civil and constitutional Rights aswell as plaintiff's "consequent- -ial suffering".

(17) <u>Punitive Damages</u> in the amount of FIFTEEN THOUSAND DOLLARS ($15,000.00), From Defendant, Karen D. Guy, State's witness., to be paid to plaintiff for "willfully conspiring" with above-said Defendant(s) to violate plaintiff's civil and constitutional Rights aswell as plaintiff's "consequential suffering".

(18) <u>Punitive Damages</u> in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00), From Defendant, Manonchek C. Young, Law library clerk., to be paid to plaintiff for "willfully conspiring" with above-said Defendant(s) to violate plaintiff's civil and constitutional Rights aswell as plaintiff's "consequential suffering".

(19) <u>Punitive Damages</u> in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00), From Defendant, Michael Little, Law library clerk., to be paid to plaintiff for "willfully conspiring" with above-said Defendant(s) to violate plaintiff's civil and constitutional Rights aswell as plaintiff's "consequential suffering".

(20) <u>Punitive Damages</u> in the amount of ($100,000.00) ONE HUNDRED THOUSAND DOLLARS, From Defendant, Angelo Johnson, Law library clerk., to be paid to plaintiff for "willfully conspiring" with above-said Defendant(s) to violate plaintiff's civil and constitut-ional Rights aswell as plaintiff's "consequential suffering".

(21) <u>Punitive Damages</u> in the amount of ONE MILLION DOLLARS ($1,000,000.00), From Defendant, Raphael Williams, Warden., to be paid to plaintiff for "Maliciously conspir--ing" with above-said Defendant(s) to violate plaintiff's civil and constitutional Rights as well as plaintiff's "consequential suffering".

(22) <u>Punitive Damages</u> in the amount of ONE MILLION DOLLARS ($1,000,000.00), From Defendant, Thomas Carroll, Warden., to be paid to plaintiff for "willfully conspiring" with above-said Defendant(s) to violate plaintiff's civil and constitutional Rights as well as plaintiff's "consequential suffering".

(23) <u>Punitive Damages</u> in the amount of ONE MILLION DOLLARS ($1,000,000.00), From Defendant, C.M.S, Correctional medical service., to be paid to plaintiff for "willfully conspiring" with above-said Defendant(s) to violate plaintiff's civil and constitutional Rights as well as plaintiff's "consequential suffering".

(24) <u>Punitive Damages</u> in the amount of FIFTY THOUSAND DOLLARS ($50,000.00), From Defendant, Janice Henry, Captain., to be paid to plaintiff for "willfully conspiring" with above-said Defendant(s) to violate plaintiff's civil and constitutional Rights as well as plaintiff's "consequential suffering".

(25) <u>Punitive Damages</u> in the amount of FIFTY THOUSAND DOLLARS ($50,000.00), From Defendant, Stacey Hollis, counselor., to be paid to plaintiff for "willfully conspiring" with above-said Defendant(s) to violate plaintiff's civil and constitutional Rights as well as plaintiff's "consequential suffering".

(26) <u>Punitive Damages</u> in the amount of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), From Defendant, Natasha L. Hollingsworth, Sargent., to be paid to plaintiff for "willfully conspiring" with above-said Defendant(s) to violate plaintiff's civil and constitutional Rights as well as plaintiff's "consequential suffering".

(27) <u>Punitive Damages</u> in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00), From Defendant, Ronald Holsterman, supervisor., to be paid to plaintiff for "willfully conspiring" with above-said Defendant(s) to violate plaintiff's civil and constitutional Rights as well as plaintiff's "consequential suffering".

(28) A jury trial on all issues triable by jury.

(29) Plaintiff's cost for this suit.

(30) Such other and further relief as this court deems just, proper and equitable.

Respectfully submitted.,                    Date: 8/3/07
Raymond E. Blake          (Raymond E. Blake)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF DELAWARE

RAYMOND E. BLAKE
        PLAINTIFF

VS.

CIVIL ACTION
(CIVIL RIGHTS COMPLAINT)
No. # 07-230 JJF

RUTH ANN MINNER, Governor
CARL C. DANBERG, Commissioner
JOSEPH R. BIDEN III, Attorney General
JAMES M. BAKER, Mayor
MICHAEL J. SZCZERBA, Police chief
SHAWN MARTYNIAK, Deputy Attorney General
DRUG MUG, City counsel
DAVE C. ROSENBLUM, Wilmington Senior Police officer
unknown FRIEDENREICH, Probation officer
MARK LEWIS, Probation officer
RAYMOND D. ARMSTRONG, Assistant Public Defender
unknown Brown, Wilmington Police officer
MARY M. JOHNSTON, superior court Judge
PEGGY L. ABLEMAN, superior court Judge
KAREN D. GUY, States witness
MANONCHEK C. YOUNG, Law Library clerk (D.C.C.)
MICHAEL LITTLE, Law Library Supervising clerk (D.C.C.)
UNKNOWN ANGELO, clerk of Law Library (H.R.Y.C.I.)
RAPHAEL WILLIAMS, Warden (H.R.Y.C.I.)
THOMAS CARROLL, Warden (D.C.C.)
C.M.S, correctional Medical Service
JANICE HENRY, Captain (D.C.C.)
STACEY HOLLIS, Counselor (D.C.C.)
NATASHA L. HOLLINGSWORTH, Sgt. (D.C.C.)
RONALD HOLSTERMAN, Supervisor of correctional (D.C.C.)

DEFENDANT(S)

## CERTIFICATE OF SERVICE

I, <u>Raymond E. Blake</u>, Plaintiff, Pro-se, hereby certify that this document titled "AMENDED CIVIL RIGHTS COMPLAINT" was given to "Prison officials" on this ___3rd___ Day of ___August___ 2007, for the forwarding to the "original Document" to the above court and copies to the Defendant(s) by certified mail-return receipt requested, via united states postal service, first class postage pre-paid. The names and addresses of the named below:

① Ruth Ann Minner
Tatnall Building
150 William Penn street
2nd Floor
Dover, DE. 19901

② Joseph R. Biden III
Attorney General's office Building
8th Floor
Carvel state office Building
820 N. French street
Wilm, DE. 19801

③ Carl C. Danberg
Commissioner of Corrections
245 Mckee Drive
Dover, DE. 19901

④ James M. Baker
Louis L. Redding Building
800 N. French street
Wilmington, DE. 19801

⑤ Michael J. Szczerba
Wilmington Police Department
Public service Building
4th & Walnut street
Wilmington, DE. 19801

⑥ Shawn Martyniak
Attorney General's office
8th Floor
Carvel state office Building
820 N. French street
Wilmington, DE. 19801

⑦ DRUG MUG

⑧ Dave C. Rosenblum
Wilmington Police Department
Public Service Building
4th & Walnut Street
Wilmington, DE. 19801

⑨ Mark Lewis
Probation & Parole
1601 Pine Street
Wilmington, DE. 19802

⑩ _____ Friedenreich
Probation & Parole
1601 Pine Street
Wilmington, DE. 19802

⑪ Raymond D. Armstrong
Public Defenders office
5th Floor
Carvel State office Building
820 N. French Street
Wilmington, DE. 19801

⑫ _____ Brown
Wilmington Police Department
Public Service Building
4th & Walnut Street
Wilmington, DE. 19801

⑬ Mary M. Johnston
Superior Court New Castle
New Castle County Courthouse
500 N. King Street
Wilmington, DE. 19801

⑭ Peggy L. Ableman
Superior Court Newcastle
Newcastle County Courthouse
500 N. King Street
Wilmington, DE. 19801

⑮ Karen D. Guy
Apt. J
26 Winchester, RD.
Newark, DE. 19713

⑯ Manonchek C. Young
Delaware Correctional Center
1181 PADDOCK, RD.
SMYRNA, DE. 19977

⑰ Michael Little
Delaware Correctional Center
1181 PADDOCK, RD.
SMYRNA, DE. 19977

⑱ Angelo Johnson
H.R.Y.C.I
P.O. Box 9561
Wilmington, DE. 19809

⑲ Raphael Williams
H.R.Y.C.I
P.O. Box 9561
Wilmington, DE. 19809

20) Thomas Carroll
   Delaware Correctional Center
   1181 PADDOCK, RD.
   SMYRNA, DE. 19977

21) C.M.S
   Correctional Medical Service
   12647 Olive Boulevard
   P.O. Box 419052
   Saint Louise, Missouri 63149052

22) Janice Henry
   Delaware Correctional Center
   1181 PADDOCK, RD.
   SMYRNA, DE. 19977

23) Stacey Hollis
   Delaware Correctional Center
   1181 PADDOCK, RD.
   SMYRNA, DE. 19977

24) Natasha L. Hollingsworth
   Delaware Correctional Center
   1181 PADDOCK, RD.
   SMYRNA, DE. 19977

25) Ronald Holsterman
   Delaware Correctional Center
   1181 PADDOCK, RD.
   SMYRNA, DE. 19977

I, Raymond E. Blake, Plaintiff, certify under the Penalty of perjury, that the foregoing is true and correct. 28 U.S.C. §1746.

Respectfully submitted.,
Raymond E. Blake
Raymond E. Blake
SBI # 377092
D.C.C.
1181 PADDOCK, RD.
SMYRNA, DE. 19977

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

## VERIFICATION

I have read the foregoing Amended Civil Rights complaint
and hereby verify that the matters alleged therein
are true, except as to matters alleged on information
and belief, and, as to those, I believe them to be true.
I certify, under the penalty of perjury, that the
foregoing is true and correct.

Executed at Wilmington, Delaware on Aug 3rd, 2007

/s/ _Raymond E. Blake_

Raymond E. Blake

Sworn to and subscribed before me
This ___3rd___ Day of _August_, 2007

_____
NOTARY

FROM: Raymond E. Blake
SBI# 377092   UNIT Pretrial A-Tier
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



OFFICE of the clerk
United states District court
844 N. King Street, Lockbox 18
Wilmington, Delaware
19801-3570

LEGAL MAIL

